UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STEFANIA MAURIZI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-0966 (EGS) |
| | ) | |
| U.S. DEPARTMENT OF STATE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## JOINT STATUS REPORT

Pursuant to the Court's October 6, 2020, Minute Order, the parties—Plaintiff Stefania Maurizi ("Plaintiff") and Defendant U.S. Department of State ("State")—submit the following joint status report.

## I.   NON-CLASSIFIED, NON-RETIRED RECORDS

On August 3, 2020, State made a first release of responsive material.  State informed Plaintiff that it had identified two responsive documents, producing one document and withholding the other pursuant to FOIA Exemption 5.  On September 3, 2020, State made a second release of responsive material.  State informed Plaintiff that it had identified six additional responsive documents, producing five documents in full and one in part.  State also released the non-exempt portions of 63 responsive, unclassified documents from the approximately 320 potentially responsive unclassified records in accordance with the Court's September 2, 2020, Minute Order on October 19, 2020.

Consistent with the parties' September 24, 2020, joint status report, State informed Plaintiff that the additional collection includes approximately 1,080 potentially responsive unclassified

documents.  Processing of these documents remains ongoing.  The parties disagree about the rate at which they must be processed.

### Plaintiff's Position

Plaintiff proposes that that State process these 1080 documents at a rate of 1000 pages or 300 documents per month (whichever is lesser), and produce them on a rolling basis beginning on November 19, 2020.  State's proposal below that it make a "good faith effort to process these documents on a rolling monthly basis at a rate of 300 pages per month" does not give Plaintiff any clarity or certainty about when the document production might be complete, nor does it comport with FOIA's mandate to promptly provide documents to requestors.  *See, e.g.*, *Seavey v. DOJ*, 266 F. Supp. 3d 241, 244 (D.D.C. 2017) (documents should be processed "within days or a few weeks" of a response, "not months or years").  As Plaintiff noted in the last Joint Status Report, government agencies in other FOIA matters have been required to produce anywhere from 400 to 5,000 pages per month.  *See, e.g., Am. Immigration Council v. DHS,* 2020 U.S. Dist. LEXIS 117862, *1 (D.D.C. July 6, 2020) (requiring agency, even in COVID era, to review 400 pages per month); *Clemente v. FBI*, 71 F. Supp. 3d 262, 264 (D.D.C. 2014) (requiring agency to review 5,000 pages per month).  Thus, Plaintiff's proposal to review at a rate of 1,000 pages or 300 documents per month is wholly reasonable, especially given that her request has been pending for more than two-and-a-half years.

### State's Position

Today, Plaintiff inquired for the first time about the number of pages these approximately 1,080 potentially responsive unclassified documents comprise.  State is working on determining that information.  As State informed Plaintiff on October 19, 2020, State proposes that it complete the relevancy review of these remaining potentially responsive unclassified documents and

anticipates making its next release on or before November 19, 2020.  Upon completion of the relevancy review, State will make a good faith effort to process these documents on a rolling monthly basis at its pre-pandemic standard processing rate of 300 pages per month.

While State will continue to endeavor in good faith to process Plaintiff's FOIA request at its pre-pandemic standard processing rate, as previously described, the significantly reduced number of available reviewers across the Department and the ongoing technological challenges of performing this work remotely will continue to constrain State's ability to process documents in this FOIA case as well as all of its other FOIA matters.  In addition, the constraints on State and other Executive agencies have created serious difficulties in obtaining necessary clearances from other Department or Executive Branch components.  State does not release documents in FOIA until it receives clearances from the internal Department components and external Executive Branch components that have equities in the information in those documents.  Because many internal Department components and external Executive Branch components are operating with reduced resources and reduced access to the necessary systems, State will likely continue to experience delays in obtaining clearances and, consequently, releasing documents requiring such clearances.

State's good-faith effort to process 300 pages per month, the standard rate at which it processed a vast majority of its FOIA litigation cases prior to the disruptions caused by the ongoing COVID-19 pandemic, is reasonable based upon a totality of the circumstances.  Complying with a Court order to process at the rate Plaintiff demands would require the Department to redirect its finite and already thinly stretched resources at the expense of other FOIA litigation cases, including redirecting reviewers from the cases to which they are currently assigned to this case, which would

halt or dramatically reduce the Department's ability to process those other cases.  The cases Plaintiff cites to justify a higher rate are inapplicable.

In *American Immigration Council v. U.S. Department of Homeland Security* ("*AIC*"), the district court adjudicated a motion for preliminary injunction seeking production of documents related to detained individuals who tested positive for COVID-19.  Civ. A. No. 20-1196 (TFH), 2020 WL 3639733, at *1 (D.D.C. July 6, 2020).  The district court granted the motion, ruling that the agencies must process approximately 800 pages of potentially responsive records at a rate of at least 400 pages per month.  *Id.*  Recognizing that the plaintiff's request "concerns a serious and time-sensitive matter," the district court determined that the plaintiff was "entitled to . . . a more expeditious timeline than that proposed by Defendants."  *Id.* at *4.  Here, Plaintiff has not shown that her request is of a similar time-sensitive nature that justifies deviation from State's standard 300-page-per-month rate, particularly in light of State's explanation about operational challenges it currently encounters.  The only similarity between this case and *AIC* is that both are pending during the COVID-19 pandemic.

The similarities between this case and *Clemente v. FBI*, 71 F. Supp. 3d 262 (D.D.C. 2014), are even more attenuated.  Six years ago, the *Clemente* court acknowledged that a 5,000-page-per-month rate was "higher than the rate would be in an ordinary case" but deemed it appropriate for reasons that are not implicated here.  *Id.* at 269.  Notably, the *Clemente* requester was terminally ill and furnished to the court medical records documenting the extent of her illness.  *Id.* at 268-69. The district court was sensitive to the fact that the *Clemente* requester needed expedited processing given "the possibility that she may have only a limited time" in which to utilize the materials for her work.  *Id.*  The sense of urgency in *Clemente* was palpable.  By contrast, Plaintiff's complaint about State's processing rate is more about inconvenience.  Although Plaintiff fails to make a

showing of *any* urgency, State is processing her FOIA request as promptly as possible and will continue to do so within reasonable parameters under current circumstances that are beyond its— and Plaintiff's—control.

## II.   OTHER RECORDS

Since the last joint status report, State has completed its onsite collection of potentially responsive unclassified retired records from the Records Service Center.  As previously described, these records are in hard copy and require personnel who are otherwise teleworking to go onsite and conduct a manual review, both with respect to the volume of documents and their responsiveness.  State will begin processing the potentially responsive unclassified retired records after it completes processing the approximately 1,080 additional potentially responsive unclassified records identified, and State has informed Plaintiff that it expects to have a better estimate of volume once it begins the manual review of those hard copy documents.  Given the time- and labor-intensive nature of reviewing retired records, which requires personnel who are currently teleworking to travel onsite to conduct a manual review of records, State will not be in a position to identify the estimated number of potentially responsive unclassified retired records until personnel go onsite to begin processing them.  Consequently, the parties agree to defer setting any deadline regarding the processing of these documents at this time.

Plaintiff states that she reserves the right to revisit this question after the non-classified, non-retired records are processed.

State further reports that circumstances related to its inability to search the classified system remain unchanged at this time.

The parties both propose to file another joint status report by December 1, 2020, but submit separate proposed orders.

Dated: October 26, 2020

Respectfully submitted,

/s/ Alia L. Smith

Alia L. Smith, D.C. Bar #992629
BALLARD SPAHR LLP
1909 K Street, N.W., 12th Floor
Washington, DC 20006
(202) 661-2200
smithalia@ballardspahr.com

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By: /s/ Robert A. Caplen

ROBERT A. CAPLEN, D.C. Bar #501480
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC  20530
(202) 252-2523
robert.caplen@usdoj.gov

Kristel Tupja, D.C. Bar #888324914
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 864-8318
tupjak@ballardspahr.com

*Counsel for Plaintiff*

*Counsel for Defendant*